UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MANATRON, INC. dba THOMSON REUTERS TAX & ACCOUNTING, GOVERNMENT, a Michigan corporation,<br><br>Plaintiff,<br><br>v.<br><br>SNOHOMISH COUNTY, a governmental subdivision of Washington State; COWLITZ COUNTY, a governmental subdivision of Washington State; and TYLER TECHNOLOGIES, INC., a Delaware corporation,<br><br>Defendants. | NO. 2:17-cv-00959<br><br>**MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Noted on the Motion Calendar for the Same Day, June 22, 2017, Under L.R. 7(d)(1) and 65. |

I.   **INTRODUCTION**

Under Local Civil Rules 7(d)(1) and 65, and 17 U.S.C. § 502(a), Plaintiff Manatron, Inc. dba Thomson Reuters Tax & Government Accounting ("TRTA") respectfully moves the Court to immediately issue an Order temporarily restraining Defendants Snohomish County and Cowlitz County (collectively "Counties"), from disclosing and/or making public TRTA's Responses to Snohomish County Request for Proposal ("RFP") #21-16SB and Cowlitz County RFP #05-2016 ("Responses"), which the Counties intend to disclose on June 22 and June 30, 2017 to Tyler Technologies, Inc. ("Tyler") a key competitor.  TRTA will seek a preliminary

MOTION FOR TEMPORARY RESTRAINING ORDER - 1

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

GSB:8795201.1 [23806.00100]

injunction, after suitable briefing and a hearing, followed by a request for a permanent injunction preventing the disclosure of TRTA's Responses.

Injunctive relief is necessary to prevent infringement of TRTA's exclusive rights in the Responses under the federal Copyright Act, 17 U.S.C. § 502(a). Such relief is also required under the Uniform Trade Secrets Act ("UTSA")[1] to prevent the disclosure, and resulting destruction, of the trade secrets contained in the Responses.

## II. STATEMENT OF FACTS

In a nutshell, this case involves a public records act ("PRA") request from a competitor, Tyler, for the responses submitted by another competitor, to gain an unfair, unwarranted economic advantage. The property assessment and taxation industry is very small and very competitive, with only five companies. Declaration of Jane Pope in Support of Temporary Restraining Order[2] ("Pope Decl"). ¶ 13.

The PRA requests at issue are for TRTA's responses to Snohomish County RFP #21-16SB and Cowlitz County RFP #05-2016 ("Responses") for property assessment and taxation software. TRTA proposed different products in each Response but both products are proprietary systems developed by TRTA, with unique patterns, programs, devices, techniques and processes. (Pope Decl. ¶¶ 14-17). Tyler submitted responses to the Counties' RFPs but lost both.

Snohomish County has been an assessment/property taxation software customer of TRTA since 1998. (Pope Decl. ¶ 4). Its current contract recognizes the proprietary interest in TRTA's software (i.e., copyright) and the obligation to treat it confidentially. (*Id*. ¶ 4). Because of this historic relationship TRTA reasonably expected Snohomish County to treat its Response as it has always treated the TRTA product, respecting TRTA's property rights and

---

[1] The UTSA is the Uniform Trade Secrets Act, RCW ch. 19.108 *et seq*. RCW 19.108.020(1) provides that "actual or threatened misappropriation [of trade secret] may be enjoined." Under this statute an injunction may be granted pursuant to FRCP 65.
[2] The Pope Decl. provides a detailed statements of the background facts.

MOTION FOR TEMPORARY RESTRAINING ORDER - 2

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

GSB:8795201.1 [23806.00100]

confidential information.  (*Id*. ¶ 20).TRTA has never publicly released its RFP responses and has internal confidentiality protections. (*Id*. ¶ 20-21).  The Responses here belong to TRTA, which holds a copyright interest in them, which TRTA views as a valuable property right. (*Id*. ¶ 14, 15).

Pope described the real, inevitable harm TRTA will experience if a chief competitor is able to obtain its game plan for the products offered to the Counties. (*Id*. ¶ 17, 18, 22). Not surprisingly, the Responses have tremendous independent economic value because TRTA competitors do not **know what is in them and cannot get them independently.**  If they could, they would be able to obtain a tremendous competitive advantage in responding to future requests for proposals from governments across the country. (*Id*.). Tyler could tailor its response to undercut TRTA because it will know what TRTA will be offering.  In short, Tyler could use this information to inform its business decisions, product choices, promotions, pricing, marketing, and virtually provide a competitive roadmap to their strategic product direction.  (*Id*.)

No facts justify handing over TRTA's valuable property to a competitor that most certainly will use it to take business away  from TRTA, a loss that is difficult, if not impossible, to quantify.

### III.   STATEMENT OF ISSUES

Whether this Court should temporarily restrain Defendant Counties from disclosing TRTA's responses to Snohomish County RFP #21-16SB and Cowlitz County RFP #05-2016 to Defendant Tyler to prevent TRTA from suffering irreparable, substantial competitive harm.

### IV.   ARGUMENT

Washington law provides for preliminary injunctions to prevent disclosure under the PRA of trade secrets that are exempt from disclosure under the PRA and UTSA.  *See* RCW 42.56.540 and 42.56.070.  Therefore, injunctive relief is available in federal court under

MOTION FOR TEMPORARY RESTRAINING ORDER - 3

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

GSB:8795201.1 [23806.00100]

FRCP 65.  *Versaterm, Inc. v. City of Seattle*, 2016 WL 4793239 (W.D.WA. 2016, Sept. 13, 2016) at *4, *5.

FRCP 65 requires a plaintiff to show:

> (1) a likelihood of success on the merits; (2) that irreparable harm is likely, not just possible, if the injunction is not granted; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest.  *See* Fed. R. Civ. P. 65; *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011); *Doe v. Reed*, 586 F.3d 671, 676 (9th Cir. 2009) (applying Federal Rule of Civil Procedure 65 standard to review of a preliminary injunction issued to prevent disclosure pursuant to the PRA), *judgment affirmed by John Doe No. 1 v. Reed*, 561 U.S. 186 (2010).  When there are "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff," the court may issue a preliminary injunction "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Cottrell*, 632 F.3d at 1136.

*Id.*

TRTA's showing here meets the foregoing criteria.

In addition, injunctive relief may be provided if necessary to prevent infringement of TRTA's exclusive rights in the Responses under the federal Copyright Act, 17 U.S.C. § 502(a).

### A.  **TRTA Will Succeed on the Merits.**

1.  <u>The Counties will infringe TRTA's copyright interest in the Releases unless enjoined.</u>

TRTA's Responses are "original works of authorship" under 17 U.S.C. § 102(a).  They became copyrightable once their unique contents were reduced to tangible form, entitled to full copyright protection pursuant to 17 U.S.C. §§ 101-1101.  As such, TRTA has the exclusive right to reproduce or distribute copies of the responses.  17 U.S.C. §§ 102, 106.  Registration is not a condition for copyright protection.  17 U.S.C. § 408(a).  Further, the attachment of notice of copyright is not required to gain copyright protection.  *Charles Garnier, Paris v. Analis Intern., Inc.*, 36 F.3d 1214 (1st Cir. 1994).

MOTION FOR TEMPORARY RESTRAINING ORDER - 4

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

GSB:8795201.1 [23806.00100]

More important, the Copyright Act pre-empts the PRA. In *College Entrance Examination Bd. v. Pataki*, 889 F. Supp. 554 (N.D.N.Y. 1995) the court found that the Copyright Act preempted a state law that required public disclosure of certain copyrights standardized tests. The court found that these disclosure requirements clashed with plaintiffs' rights under the Copyright Act:

> Given the broad disclosure requirements of the STA, the court is left with the inescapable conclusion that the STA interferes with the moving plaintiffs' exclusive ownership rights as set forth in § 106 of the Copyright Act. It does so, for example, by requiring these plaintiffs to disclose their test forms and the individual test questions which, for various reasons, they wish not to disclose. In addition, the STA classifies these disclosed materials as public records and, thereby, subjects them to disclosure to, and reproduction by, the public. *Under these circumstances, the court holds, as it has previously, that unless the STA's disclosure requirements constitute fair use, the STA directly conflicts with, and is therefore preempted by, the Copyright Act. See, generally AAMC 1*.

*Id.* at 564. (emphasis supplied)

The only Washington case to address the issue of a copyrighted public record did not answer the question of whether the Copyright Act preempts the PRA. In *Lindberg v. County of Kitsap*, 133 Wn.2d 729, 948 P.2d 805 (1997), the plaintiffs sent a PRA request for copyrighted engineering drawings in the possession of Kitsap County. The court approved release, under the theory that providing copies would be a "fair use" allowable under the Copyright Act because the plaintiffs planned to use the drawings for comment and criticism in public hearings. Here, however, providing the Response to Tyler could not be a "fair use." Providing the <u>full</u> Responses to a competitor, that would use them to destroy their value to TRTA in the market, could not satisfy four non-exclusive factors in 17 U.S.C. § 107.[3] Implicit in *Lindberg* is the conclusion that a copyrighted work in the possession of a public agency may not be

---

[3] 1. Purpose and character of use.
2. Nature of copyrighted work.
3. Amount and substantiality of portion used.
4. Effect upon the potential market or value of the copyrighted work.

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

GSB:8795201.1 [23806.00100]

1  released without the consent of the copyright holder if the "fair use" exemption does not apply.

2  As evident by this motion TRTA does not consent to the release of its copyrighted
3  Responses to its competitor.  TRTA has the legal right to control the distribution of its
4  Responses under the Copyright AC, which must pre-empt the PRA, according to *College*
5  *Entrance Examination Bd.*  Because the Counties would violate the Copyright Act by
6  distributing the Responses without consent TRTA will succeed in establishing that violation
7  and therefore is entitled to an injunction to stop such distribution.

8      2.    <u>The Counties will violate the UTSA by disclosing TRTA's trade secrets in the Responses.</u>

10  The Responses are exempt from public disclosure under the PRA because they contain
11  trade secrets.  The PRA provides that records and information are exempt from public
12  disclosure if "the record falls within the specific exemptions of … [an]other statute which
13  exempts or prohibits disclosure of specific information or records." RCW 42.56.070(1).  The
14  information requested here is a trade secret under the UTSA, which is another statute that
15  prohibits public disclosure, and so is exempt from disclosure to Defendants here.
16  RCW 19.108.010; *Progressive Animal Welfare Soc'y. v. Univ. of Wash.*, 125 Wn.2d 243 (1994)
17  ("[T]his 'other statute' operates as an independent limit on disclosure of portions of the records
18  at issue here that have even potential economic value.  **The PRA is simply an improper**
19  **means to acquire knowledge of a trade secret.").** (emphasis supplied)

20  Under the UTSA, a "trade secret" is defined as:

21      [I]nformation, including a formula, pattern, compilation,
    program, device, method, technique, or process that:

22      (a) Drives independent economic value, actual or potential, from
23      not being generally known to, and not being readily ascertainable
    by proper means by, other persons who can obtain economic
24      value from its disclosure or use; and

25      (b) Is the subject of efforts that are reasonable under the
    circumstances to maintain its secrecy.

26  RCW 19.108.010(4).

MOTION FOR TEMPORARY RESTRAINING ORDER - 6

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464 3939*

GSB:8795201.1 [23806.00100]

1   The Responses contain TRTA's "patterns, programs, devices, methods, techniques and
2   processes." (Pope Decl. ¶ 16). They derive "independent knowledge…from not being generally
3   known" (*Id*. at ¶¶ 18, 19).  The Reponses' trade secrets "cannot be readily ascertainable by
4   proper means" (*Id*. at ¶¶ 14, 18).   Tyler and other competitors "can obtain economic value
5   from disclosure" of the Reponses' trade secrets. (*Id*. at ¶¶ 17, 19).  TRTA's efforts to maintain
6   the secrecy of the Reponses' trade secrets "are reasonable under the circumstances." (*Id*. at ¶¶
7   20, 21).  Therefore, TRTA will succeed in proving that the Reponses' trade secrets, indeed,
8   qualify under RCW 19.108.010(4).

**B.   TRTA Has A Well-Grounded Fear That Its Proprietary Data and Trade Secrets Will Be Released In Violation of Washington Law.**

Unless enjoined by June22, 2017 Snohomish County has stated that it will produce the requested information to Defendant Tyler, with Cowlitz County to follow on June 30, 2017. (Pope Dec. Exs. A & B).   Accordingly, TRTA has a well-grounded fear that its right to protect its copyrighted Responses and  trade secrets will be invaded in violation of federal and Washington law.

**C.   Public Disclosure of TRTA's Copyrighted Responses and Trade Secrets Will harm TRTA and Is Not in the Public Interest.**

Disclosure of the records requested by Tyler would certainly harm the economic viability of TRTA. The government property assessment and taxation software industry is highly competitive particularly between Tyler and TRTA, who responded to the same RFPs at issue in this case.  Disclosure of the requested records will allow competitors like Tyler to gain an unfair competitive advantage, and reap the benefits of TRTA's substantial investment and effort in developing its software products without cost.  The Pope Declaration describes the very real harm TRTA could suffer if Tyler obtained the Snohomish County Response, which could arm Tyler with competitive information to challenge the award in the months prior to final contract execution. ¶ 17, 19, 22.

MOTION FOR TEMPORARY RESTRAINING ORDER - 7

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

GSB:8795201.1 [23806.00100]

Further cases from Washington district courts have found that disclosure of a trade secret *alone* is sufficient to establish irreparable harm. In *Pac. Aerospace & Elec. Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1198 (E.D. Wa. 2003) the court said, "An intention to make imminent or continued use of a trade secret or disclose it to a competitor will almost certainly show irreparable harm." More recently, in *Robbins Company v. JCM Northlink LLC*, 2016 WL 4193864 (W.D. Wa. Aug. 9, 2016) *3, the court relied upon *Pac. Aerospace*, stating, "The disclosure of Robbin's information that is confidential, proprietary, or constitutes trade secrets *alone* is sufficient to show a likelihood of irreparable harm…. [O]nce confidential information is disclosed it cannot be recovered." *Accord Ossur Holdings, Inc. v. Bellacure, Inc.*, 2005 WL 3434440 (W.D. Wa. Dec. 14, 2005) at *9.

In *Versaterm v. City of Seattle*, 2016 WL 4793239 (W. D. Wa. Sept. 13, 2016, Judge Robart granted a motion for preliminary injunction to prevent the City of Seattle from releasing the computer programs and manuals of the vendor that allows the Seattle Police Department to manage its records and engage in its computer-aided dispatch operations.  He concluded at *7:

> Irreparable harm may occur where "[p]ublic disclosure of a trade secret" is threatened because such disclosure "destroys the information's status as a trade secret." …. Disclosure also allows "competitors to reproduce [the] work without an equivalent investment of time and money." … ("The disclosure of...information that...constitutes trade secrets alone is sufficient to show a likelihood of irreparable harm."). Further, evidence that trade secrets are likely to be disclosed may support a finding of irreparable harm. (Citations omitted.)

Thus, if *intent alone* is sufficient to establish irreparable harm the requisite intent is clearly evident in this case.[4]

Lastly, disclosing the requested records to a competitor is not in the public interest.  The Washington State Legislature has declared as a matter of public policy that trade secrets and other confidential and commercial information must be protected from unnecessary disclosure.

---

[4] That is because "[a] trade secret's value lies in the 'right to exclude others.'" If other are given the trade secret, the 'holder of the trade secret has lost his property interest.'" *Phillip Morris, Inc. v. Reilly*, 312 F.2d 24, 37 (1st Cir. 2002). The harm from "loss of trade secrets cannot be measured in money damages" and therefore "[a] trade secret once lost is … lost forever." *North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999) (quoting *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984) (*per curiam*)).

MOTION FOR TEMPORARY RESTRAINING ORDER - 8

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

GSB:8795201.1 [23806.00100]

*See "Progressive Animal Welfare Society v. University of Washington*, 125 Wn.2d 243, 263, 884 P.2d 592 (1994)" (citing Laws of 1994, Ch. 42, § 1, p. 130) (noting the Washington legislature's determination that the protection of trade secrets is a matter of public policy). Disclosure of trade secrets pursuant to a public records request would be contrary to the public interest as determined by the Washington Supreme Court, which has held that "the public records act may not be used to acquire knowledge of a trade secret." *Confederated Tribes of Chehalis Reservation v. Johnson*, 135 W.2d 734, 748, 958 P.2d 260 (1998).

A trade secret does not lose its confidential status when it is submitted to a public agency. *Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 52, 738 P.2d 665 (1987). Even though the PRA encourages broad disclosure, trade secrets deserve protection:

> The legislature…recognizes that protection of trade secrets, other confidential research, development, or commercial information concerning products or business methods promotes business activity and prevents unfair competition. Therefore, the legislature declares it <u>a matter of public policy that the confidentially of such information be protected and its unnecessary disclosure be prevented</u>. (Emphasis supplied.)

All of the policies above favor protecting TRTA's trade secrets, particularly from competitors that use the PRA to gain an unfair competitive advantage, which is hardly in the public interest because this scenario only leads to private gain.

The underlying policies of the Copyright Act also must be considered because they protect the effort made by a creator in a copyrighted work who is entitled to the fruits of its labor. That is why the court in *College Entrance Examination Bd. v. Pataki*, 889 F. Supp. 554 (N.D.N.Y. 1995) found that disclosure of a copyrighted work under a state disclosure law unlawfully interfered with the copyright owner's exclusive rights.

Finally, as Judge Robart noted in *Versaterm* "when there are 'serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff, the court may issue a preliminary injunction". In this case, the balance favors TRTA because it will be harmed far more by disclosure of its copyrighted, confidential Responses than Tyler, that only hopes to

MOTION FOR TEMPORARY RESTRAINING ORDER - 9

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

GSB:8795201.1 [23806.00100]

profit unfairly from the PRA for its own commercial interests.[5]

.

## V. CONCLUSION

For the reasons set forth above, this Court should grant this Motion for Temporary Restraining Order.

DATED this 22nd day of June, 2017.

GARVEY SCHUBERT BARER

By *s/Judith A. Endejan*
Judith A. Endejan, WSBA #11016
Attorneys for Plaintiff

---

[5] The PRA recognizes that it should not be used as a tool for commercial interests. For instance, RCW 42.56.070(9) provides that public agencies may not " sell or provide access to lists of individuals requested for commercial purposes."

MOTION FOR TEMPORARY RESTRAINING ORDER - 10

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464 3939

GSB:8795201.1 [23806.00100]